1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                             EASTERN DISTRICT OF CALIFORNIA

10

ROBERT RODNEY RUBISH,              )        1:05-CV-00687 LJO GSA HC
11                                  )
                    Petitioner,     )
12                                  )        FINDINGS AND RECOMMENDATION
      v.                            )        REGARDING PETITION FOR WRIT OF
13                                  )        HABEAS CORPUS
                                    )
14   M. S. EVANS,                   )
                                    )
15                  Respondent.     )
                                    )
16   _____ )

17          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.

19                                        **BACKGROUND**

20          Petitioner is currently in the custody of the California Department of Corrections pursuant to

21   a judgment of the Superior Court of California, County of Kings, following his conviction by jury

22   trial on May 24, 2000, of battery upon a non-confined person by an inmate in violation of California

23   Penal Code § 4501.5. (CT[1] 253-254.) The jury also found true the allegations that Petitioner had

24   suffered a prior conviction for murder and a prior conviction for burglary within the meaning of

25   California Penal Code §§ 667(d) & (e). (CT 255.)  On July 10, 2000, Petitioner was sentenced to

26   serve an indeterminate term of twenty-five years to life plus one year, to be served consecutively to

27

28          _____
            [1]"CT" refers to the Clerk's Transcript on Appeal.

1   his current term. (CT 349.)

2        Petitioner appealed his conviction to the California Court of Appeals, Fifth Appellate District

3   (hereinafter "Fifth DCA"). On March 27, 2002, the Fifth DCA affirmed the conviction in an

4   unpublished opinion. See Lodged Doc. No. 1[2]. Petitioner then filed a petition for review in the

5   California Supreme Court, and the petition was summarily denied on June 12, 2002. See Lodged

6   Doc. No. 2.

7        Petitioner then sought collateral relief in the state courts. On June 18, 2003, Petitioner filed a

8   petition for writ of habeas corpus in the Kings County Superior Court. See Lodged Doc. No. 3. The

9   petition was summarily denied on procedural grounds. Id. On November 3, 2003, Petitioner filed a

10  habeas petition in the Fifth DCA. See Lodged Doc. No. 4. That petition was summarily denied on

11  March 12, 2004, without comment or citation to authority. Id. Petitioner then filed a habeas petition

12  in the California Supreme Court. On March 16, 2005, the petition was summarily denied on

13  procedural grounds. Id.

14       On June 1, 2005, Petitioner filed the instant petition for writ of habeas corpus in this Court.

15  Petitioner raises the following eight claims for relief: 1) "Trial Court exceeded its authority and

16  committed reversible error in summarily denying appellant the right to privately retained standby

17  counsel, which effectively deprived appellant of the right to act in propria persona"; 2) "Government

18  violated both "Brady" and "Jencks" to deprive defendant of evidence that would go directly to the

19  issue of innocence and the truthfulness of prosecution witnesses"; 3) "The government vouched for

20  the veracity of the State's witnesses, and of the deceitfulness of defense witnesses, thereby violating

21  defendant's Due Process rights, and the right of a fair trial"; 4) "Government introduced evidence

22  that they should have known to be false"; 5) "Defense counsel was ineffective, depriving defendant

23  of rights and contributed directly to the jury verdict"; 6) "Ineffective assistance of counsel forced

24  defendant to testify at the trial"; 7) "Court was in error of E.C. §§1043-1046, as well as rules

25  regarding "Pitchess" motions, depriving defendant of due process and equal protection of law"; and

26  8) "There is insufficient evidence to support the convictions, in violation of the 6th and 14th

27

28       [2]"Lodged Doc." refers to the documents lodged by Respondent with the response.

1   Amendments of the U.S. Const."

2       On September 22, 2005, Respondent filed an answer to the petition. On December 3, 2007,

3   Petitioner filed a traverse.

4                              **FACTUAL BACKGROUND**

5       On November 23, 1998, Correctional Officer Kevin Curtiss was overseeing Yard 1 at C

6   Facility at the California Substance Abuse Treatment Facility at Corcoran State Prison. (RT[3] 67.) At

7   approximately 1:50 p.m., a physical altercation broke out between two inmates. (RT 70.) Officer

8   Curtiss promptly ordered all inmates to get on the ground. (RT 70.) When an officer notifies inmates

9   to get on the ground, the inmates are required to either lie down or sit down. (RT 71.) The inmates

10  are informed of this requirement during their initial orientation at the prison. (RT 72.) After Officer

11  Curtiss gave the order to get down, all 200 inmates got down on the ground, except for five inmates:

12  Petitioner, inmate Malarkey, inmate Vegas, inmate Pearce, and inmate McNierny. (RT 72-73.)

13      Correctional Officer G. Floyd was the first officer to respond. (RT 77.) Officer Floyd

14  approached the five standing inmates and told them to get down on the ground. (RT 78.) Petitioner

15  sat down on the ground but Malarkey remained standing. (RT 78.) Floyd again ordered Malarkey to

16  get down, but Malarkey took a combative stance and faced Floyd. (RT 78, 165, 268-269.) Floyd had

17  his baton drawn and advanced on Malarkey. (RT 79.) At that point, Malarkey threw a punch at

18  Floyd's chest area. (RT 79, 166-167, 170, 269.) Malarkey then grabbed hold of the microphone wire

19  worn by Floyd and pulled at it. (RT 80, 270.) Floyd responded by raising his baton to swing at

20  Malarkey. (RT 80, 271.) Petitioner, who until then had been sitting, stood up and swung his hand at

21  Floyd hitting him in the back of the head and knocking him head over heels to the ground. (RT 80,

22  166, 168, 271-273.) After retrieving Officer Floyd's baton, Petitioner stood over him and attempted

23  to strike him in the head area; however, Floyd managed to roll over and grab hold of the baton before

24  it could make contact. (RT 171, 274-275. ) Petitioner and Floyd then wrestled for control of the

25  baton. (RT 82-83, 170, 276-278.) At that point, other officers began arriving on the scene. Officers

26  Pearce and Chavez approached and Chavez pulled out her side baton and swung a couple of times at

27

28          [3]"RT" refers to the Reporter's Transcript on Appeal.

1    Petitioner. (RT 85-86.) Pearce also used her baton and hit Petitioner in the right torso area. (RT 123,

2    176.) Despite the officers' use of force and commands, Petitioner refused to get off of Floyd. (RT 86,

3    176.) Officer Pearce then pulled Petitioner from behind to the point where Floyd was able to move

4    into a position over Petitioner. (RT 87, 124, 177.) Disregarding all orders to comply, Petitioner

5    continued to struggle with Floyd. (RT 177.) Pearce attempted further strikes to Petitioner's arm and

6    shoulder area. (RT 178-179.) Floyd was finally able to regain control of his baton. (RT 181, 280.) At

7    that point, Petitioner rolled onto his stomach and struggled further until he was finally placed in

8    mechanical restraints. (RT 87, 181.)

9                                         **DISCUSSION**

10   **I.  Jurisdiction**

11           Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

12   to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

13   the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362,

14   375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S.

15   Constitution.  In addition, the conviction challenged arises out of the Kings County Superior Court,

16   which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly,

17   the Court has jurisdiction over the action.

18           On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

19   1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

20   <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); <u>Jeffries v. Wood</u>, 114

21   F.3d 1484, 1499 (9th Cir. 1997), *quoting* <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th Cir.1996), *cert.*

22   *denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)

23   (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was

24   filed after the enactment of the AEDPA; thus, it is governed by its provisions.

25   **II.  Legal Standard of Review**

26           This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

27   pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

28   Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

1   The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death

2   Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70

3   (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the

4   adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable

5   application of, clearly established Federal law, as determined by the Supreme Court of the United

6   States" or "resulted in a decision that was based on an unreasonable determination of the facts in

7   light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,

8   538 U.S. at 70-71; see Williams, 529 U.S. at 413.

9   As a threshold matter, this Court must "first decide what constitutes 'clearly established

10  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

11  quoting 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court

12  must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

13  of the relevant state-court decision." Id., quoting Williams, 592 U.S. at 412. "In other words, 'clearly

14  established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by

15  the Supreme Court at the time the state court renders its decision." Id.

16  Finally, this Court must consider whether the state court's decision was "contrary to, or

17  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

18  quoting 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the

19  writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

20  question of law or if the state court decides a case differently than [the] Court has on a set of

21  materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

22  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state

23  court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

24  applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

25  "[A] federal court may not issue the writ simply because the court concludes in its

26  independent judgment that the relevant state court decision applied clearly established federal law

27  erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A

28  federal habeas court making the "unreasonable application" inquiry should ask whether the state

1    court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

2    Petitioner has the burden of establishing that the decision of the state court is contrary to or

3    involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,

4    94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states,

5    Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

6    decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th

7    Cir.1999).

8    AEDPA requires that we give considerable deference to state court decisions. The state

9    court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

10   interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), cert. denied, 537

11   U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

12   **III.  Review of Petitioner's Claims**

13       **A.  Ground One**

14       In his first claim for relief, Petitioner contends the trial court committed reversible error when

15   it denied Petitioner's request for standby counsel.

16       *1. Underlying Facts*[4]

17       Petitioner made a Faretta[5] motion on April 12, 2000. Petitioner initially explained he wanted

18   to represent himself because he felt it was the only way for him to meaningfully participate in his

19   case. He stated his decision to represent himself had "nothing personal to do with" his attorney.

20       The trial court then advised Petitioner of his rights under Faretta:

21       THE COURT: Under *Faretta* you have a right embodied in the Constitution to act as
     your own counsel. Now, that's not the right to act as co-counsel, that is a right to be your own

22   attorney exclusively, solo, flying by yourself and representing your own case, calling your
     own shots, filing your own briefs. If you are permitted to represent yourself and can establish

23   a constitutional basis and persist in seeking that option, and if I allow you to act as your own
     counsel under [People v. Faretta,] then you would be strictly proceeding on your own and as

24   your own counsel. You wouldn't have someone co-chairing or co-piloting with you.

25       Do you understand that?

26

27   _____

     [4]These facts are taken from the opinion of the Fifth DCA. See Lodged Doc. No. 1 at 2-6.

28   [5]Faretta v. California, 422 U.S. 806 (1975).

[PETITIONER]: I understand. I understand that, your Honor, and my - - my - - my broad understanding was that I could have paid counsel standing by.

THE COURT: No, I will not permit that, it's one way or the other. You can either represent yourself or you can have counsel represent you.

[PETITIONER]: I'll tell you what, Mr. Bissig, why don't you give me about five, ten minutes with my attorney before we close this motion out, we need to clear some air real quick, and if we can't resolve a couple of issues and I'd like to place it on the record that I'd like to represent myself and call my own shots.

THE COURT: Okay.

The matter was trailed to allow Petitioner time to consult privately with Ms. Hart, his attorney. After this conference, Ms. Hart reiterated Petitioner's desire to proceed in pro per:

MS. HART: What - - what he wants to do is he wants to represent himself and he wants - - and I'm ready to withdraw as attorney of record on the grounds of difference in opinions about trial strategy, experts, amount of time that should be spent on the case, and that sort of thing. So, he wants to represent himself.

I also discussed with him potential settlement of the case and indicated that I had had discussions about settlement and he - - well, he seemed momentarily interested in it and then he just said, well, they didn't do anything, I want to - - I just - - I want to go to trial and I want to represent myself on it, and I said, fine, we'll - - I'll let the Court know.

THE COURT: Okay.

On his return to the courtroom, the trial court again asked Petitioner if he wanted to represent himself:

THE COURT: . . . After discussing the matter with your attorney, do you wish to proceed with your motion to represent yourself, Mr. Rubish?

[PETITIONER]: Yes, your, Honor.

THE COURT: All right, I have a form here that I'm going to have you fill out, and we'll give you a few moments to do that.

Petitioner completed the form, entitled "Petition to Proceed in Propria Persona," and signed it. The court received the petition and asked Petitioner if he had any questions about its contents.

THE COURT: We'll call the matter of People versus Rubish. We're resuming the consideration of Mr. Rubish's Faretta motion. The record will reflect he is present with his current attorney, Katherine Hart, the District Attorney's Office is represented by John Brennan.

I've received the Petition To Proceed In Propria Persona that's been filled out by Mr. Rubish, with the assistance of counsel.

Do you have any questions about any of the matters that are in this form, Mr. Rubish?

1     [PETITIONER]: No, your Honor. The only question I pose to the Court right now
was, once I'm back in the prison and I am placed in Ad. Seg. again, as you know that's where
2     I currently reside, I have limited access to the law, telephone privileges, etcetera.

3     THE COURT: Okay, you're going to have a real problem representing yourself, but
that's your choice. You'll get no special privileges or status or other opportunities simply
4     because of your pro per election. You'll just have to make do with the limitations that exist.

5     [PETITIONER]: That's putting me at quite a disadvantage, your Honor.

6     THE COURT: It certainly does, but it's your choice. Your family has hired one of the
best attorneys in the San Joaquin Valley to represent you. If you choose to forego her services
7     and undertake the rather formidable hurdle of representing yourself, with the current physical
limitations you have as a state prison inmate, it's your choice and a choice you have a right to
8     make regardless of its wisdom in the long term, or its consequences in terms of your future.

9     [PETITIONER]: Your Honor, I'd ask the Court then if it's the Court's belief that I
can be not - - at least granted some type of privileges to access equal amounts of the law that
10    the District Attorney has, or at least be moved into a county jail or facility such as where I
can be assured that I am getting such research, access to a telephone in a private nature so as
11    not to expose my case, because my case is against CDC which currently has custody of me,
which places me at quite a disadvantage.
12
The current order that stands before the Court, as far as phone privileges go, are twice
13    a week and to be monitored due to escape risks in my past. That's - - that alone poses quite a
disadvantage in discussing matters with my attorney, granted I could just riot, but at the
14    Court's discretion they've granted me an opportunity to talk to my attorney twice a week.

15    I need legal aid, as you know, which will be experts, etcetera, and I can't do it all
sitting in an Ad. Seg. cell hoping that an officer is going to release me from my cell, place me
16    in a little four-by-four cubicle. I've already posed the Court with a Writ of Habeas Corpus
outlining the law that they do have, which is inadequate for any inmate to represent himself
17    in a court of law, especially, in a grand jury indictment, your Honor. I don't feel it's adequate
for you to make a ruling as such and I'm going to rest at that. If you're going to maintain this
18    position the I'm going to ask, your Honor, that I just keep Katherine Hart as my attorney, and
let the record reflect that that was your ruling that I wasn't going to receive any pro per
19    privileges in the prison.

20    THE COURT: All right. Well, that will be my ruling and we'll note that you're
changing your position because of my announced intention.
21
[PETITIONER]: Okay, your Honor.
22
THE COURT: All right.
23
Then are you willing to continue, Ms. Hart?
24
MS. HART: Yes, your Honor.
25
*2. Review of Claim*
26
This claim was presented on direct appeal to the Fifth DCA and rejected in a reasoned
27
opinion. <u>See</u> Lodged Doc. No. 1. The claim was then presented to the California Supreme Court in a
28

1   petition for review whereupon it was summarily denied on June 12, 2002. <u>See</u> Lodged Doc. No. 2.

2   The California Supreme Court, by its "silent order" denying review of the Fifth DCA's decision, is

3   presumed to have denied the claims presented for the same reasons stated in the opinion of the Fifth

4   DCA.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).

5        In rejecting this claim, the Fifth DCA found Petitioner was not denied his right to act in

6   propria persona when the trial court denied his request to have privately retained "standby counsel."

7   The appellate court analyzed Petitioner's claim as follows:

### 1. *Faretta* and the Right to Self-Representation

9        The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy
     the right . . . to have the Assistance of Counsel for his defense." (*See Gideon v. Wainwright*
10   (1963) 372 U.S. 335, 349.) The California Constitution provides a similar right: "The
     defendant in a criminal cause has the right . . . to have the assistance of counsel for the
11   defendant's defense" and "to be personally present with counsel." (Cal. Const., art. I, § 15.)

12        In *Faretta, supra*, 422 U.S. 806, the United States Supreme Court held that although
     the right to self representation is not stated in the Sixth Amendment, "the right to self-
13   representation - - to make one's own defense personally - - is . . . necessarily implied by the
     structure of the Amendment." (*Faretta, supra*, 422 U.S. at p. 819.) A trial court must grant a
14   defendant's request for self-representation if the appropriate conditions are met, and *Faretta*
     error is reversible per se. (*People v. Welch* (1999) 20 Cal.4th 701, 729 [cert. den. *Frederick v.
15   United States* (2000) 528 U.S. 1154.]

16        [Petitioner] contends that he was forced to withdraw his *Faretta* motion, foregoing
     his right of self-representation, because the trial court refused to accommodate his request for
17   "stand-by" counsel.

### 2. [Petitioner] Never Requested Assistance of Counsel

19        Here, the transcript of [Petitioner's] *Faretta* motion hearing contains only one
     mention of standby counsel. Immediately after the court advised [Petitioner] that he
20   "wouldn't have someone co-chairing or co-piloting with you," [Petitioner] stated his "broad
     understanding" that he could have "paid counsel standing by." When the trial court informed
21   [Petitioner] he had no right to standby counsel: "No, I will not permit that, it's one way or the
     other. You can either represent yourself or you can have counsel represent you," [Petitioner]
22   did not raise the issue again.

23        [Petitioner] interprets the court's statements as forbidding any attempt to consult any
     attorney, including privately paid counsel, at any time. However, the court simply prohibited
24   dual representation, requiring that [Petitioner] choose to "*represent*" yourself" or "have
     counsel *represent* you." If [Petitioner] chose to represent himself, the court would not permit
25   counsel to "co-chair" or "co-pilot" at trial. The court did not address, or thereby preclude,
     out-of-court consultation with an attorney.
26
          Indeed, as the *Faretta* hearing proceeded, [Petitioner] never expressed any
27   understanding that he was prohibited from merely consulting counsel. [Petitioner] never
     stated he required an attorney's assistance to prepare his case. In fact, [Petitioner] described
28   the "legal aid" he needed as "you know, which will be experts, etcetera." He never asked the

court to formally recognize Ms. Hart as standby counsel. [Petitioner] never described the tasks he desired Ms. Hart to perform. Ms. Hart did not indicate that she agreed to serve as standby counsel, rather she stated she was "ready to withdraw as attorney of record on the grounds of difference of opinion about trial strategy, experts, amount of time that should be spent on the case, and that sort of thing." [Petitioner] verbalized only three objections to proceeding in pro per: his limited telephone privileges; his restricted access to the law library; and his general lack of privacy in which to prepare his defense. He stated he was withdrawing his *Faretta* motion because of his understanding that he himself would have no "pro per privileges in the prison."

The record reflects that [Petitioner] abandoned his request to represent himself because of the disadvantages inherent in that choice. As such we do not reach [Petitioner's] contention that a defendant has the constitutional right to the out-of-court services of privately retained counsel.

### 3.   [Petitioner] was not Entitled to "Standby Counsel"

Even if we interpret [Petitioner's] "broad understanding" of his right to standby counsel as a request for same, the trial court did not err.

A defendant in a criminal case possessed two constitutional rights with respect to representation that are *mutually exclusive*. A defendant has the right to be represented by counsel at all critical states of a criminal prosecution. [Citations.] At the same time, the United States Supreme Court has held that because the Sixth Amendment grants to the accused personally the right to present a defense, a defendant possesses the right to represent himself or herself. (*Faretta v. California, supra,* 422 U.S. 806, 819 [95 S.Ct. 2525, 2533] . . . ." (*People v. Marshall* (1997) 15 Cal.4th 1, 20, italics added.)

Our Supreme Court has repeatedly emphasized that these rights cannot be exercised simultaneously. (*People v. Clark* (1992) 3 Cal.4th 41, 97 (*Clark*) [cert. den. (1993) 507 U.S. 993: "a criminal defendant does not have a right both to be represented by counsel and to participate in the presentation of his own case"]; [Citations.] Furthermore, a defendant who elects self-representation "does not have a constitutional right to choreograph special appearances by counsel." (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 183.)

[Petitioner] admits that "[t]he court has the power to control whether counsel or the defendant will conduct the defense at trial, limit exchanges between the self-represented defendant and advisory counsel during trial, [and] prohibit joint and equal representation by defendant and counsel." He nonetheless argues that "[t]he court does not have the power to deny a defendant the right to hire counsel for legal research and counseling." Unfortunately, [Petitioner] never raised this contention before the trial court and has waived it on appeal. Accordingly, [Petitioner's] one reference to wanting "paid counsel standing by," at best, requested recognition of "standby" counsel.

Contrary to [Petitioner's] suggestion, the term "standby counsel," does not necessarily limit the attorney's role to out-of-court assistance with discovery and research and mutely standing prepared to complete the trial if the defendant cannot.

California courts share no consensus on the role of standby counsel and no California case suggests that standby counsel plays any role in trial preparation or pretrial procedural matters. The Appellate Court in *Brookner v. Superior Court* (1998) 64 Cal.App.4th 1390 remarked, "[t]he terms 'advisory counsel' and 'standby counsel' are seldom defined with any sort of analytical precision," before concluding:

> Advisory or standby counsel must often, and necessarily, remain confused and indecisive as to their roles and responsibilities, in contrast to counsel appointed to defend the case whose duties are well-defined and for whom a standard of ineffectiveness is well-known. (*Id.* at pp. 1394-1395.)

Our Supreme Court has observed "The cases have loosely used such terms as . . . 'advisory counsel,' 'standby counsel,' and 'hybrid representation' to describe a multitude of situations in which both the accused and professional counsel are involved in the presentation of the defense case." (*Hamilton, supra,* 48 Cal.3d at p. 1164, fn. 14.)

On the other hand, the United States Supreme Court takes the position that standby counsel may actively advise the defendant and participate in the trial. The *Faretta* court placed no limitations on standby counsel's role:

> Of course, a State may - - even over objection by the accused - - appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary. *See United States v. Dougherty* 154 U.S.App.D.C. 76, 87-89, 473 F.2d 1113, 1124-1126." (*Faretta, supra,* 422 U.S. at p. 834, fn. 46)

*United States v. Dougherty* indicated standby counsel may be called on "to call the judge's attention to matters favorable to the accused upon which the judge should rule on his own motion," which implicates in-court representation. (See *United States v. Dougherty* (D.C.Cir. 1972) 473 F.2d 1113, 1125.) Furthermore, the high court specifically rejected a rule that standby counsel should be "seen, but not heard" in *McKaskle v. Wiggins* (1983) 465 U.S. 168, 173.) The court further remarked that *Faretta* and *Dougherty* "indicate that no absolute bar on standby counsel's *unsolicited participation* is appropriate or intended." (*McKaskle v. Wiggens, supra,* 465 U.S. at p. 176, italics added.)

[Petitioner] made no attempt to explain what he meant by "standby counsel" during the hearing on his *Faretta* motion. He cannot now complain that the court may have understood the term to mean something at variance with the definition [Petitioner] urges on appeal.

Our Supreme Court has held "none of the 'hybrid' forms of representation, whether labeled 'cocounsel,' 'advisory counsel,' or 'standby counsel,' is in any sense constitutionally guaranteed." (*People v. Bloom* (1989) 48 Cal.3d 1194, 1218 [cert. den. (1990) 494 U.S. 1039].) Accordingly the trial court properly possessed the discretion to grant or deny [Petitioner's] motion.

### 4.   The Trial Court Did Not Abuse Its Discretion in Prohibiting Standby Counsel

[Petitioner] asserts that the trial court had no discretion to forbid Ms. Hart to serve as standby counsel because she was privately retained. [Petitioner] argues that the decision as to whether or not to grant standby counsel is based upon weighing of a pro se defendant's legal abilities, or lack thereof, and other reasons for seeking appointment of advisory counsel, "against the need for an expenditure of public funds." This argument is unsupported by rule or reason. No authority suggests that cost be considered in appointing advisory counsel.

Alternatively, [Petitioner] asserts that the court abused its discretion in flatly denying standby counsel. Although the court may authorize the criminal defendant to both be represented by counsel and to participate in the presentation of his own case, such an arrangement is generally undesirable, and can only be made upon a "substantial" showing

1  that it will promote justice and judicial efficiency in the particular case. (*Clark, supra,* 3 Cal.4th at p. 97.) [Petitioner's] claim that the court "had no reason" to deny standby counsel

2  is therefore irrelevant. [Petitioner] made no effort to inform the trial court of Ms. Hart's expected role in the proceedings, let alone how her participation would promote justice and

3  judicial efficiency.

4  We will not set aside a trial court's determination whether to allow standby counsel "'as long as there exists a reasonable or even fairly debatable justification, under the law'"

5  for the court's action. (*Clark, supra,* 3 Cal.4th at p. 111, citing *People v. Crandell* (1988) 46 Cal.3d 833, 863.) [Petitioner's] citation to *People v. Bigelow* (1984) 37 Cal.3d 731, in which

6  our high court found the denial of advisory counsel reversible error, is unavailing as the case is entirely distinguishable.

7
8  The defendant in *Bigelow,* was a Canadian with only a ninth-grade education and no familiarity with California law, whereas [Petitioner] is a long time California resident with a

9  high-school equivalency degree. The defendant in *Bigelow* was charged with four special circumstances under the 1978 death penalty initiative, two of which had never been judicially

10  construed and were arguably inapplicable to the defendant's act, while in the present case the defendant was charged only with assault on a non-inmate. The instant record demonstrates

11  [Petitioner's] intelligence, literacy, and ability to advocate in his own cause. For example, [Petitioner] repeatedly persuaded the trial court to continue the arraignment and successfully

12  negotiated special telephone privileges for himself and Mr. Malarkey. The trial court did not abuse its discretion in denying [Petitioner's] request for standby counsel.

13  See Lodged Doc. No. 1 at pp. 6-12 (some footnotes and citations omitted.)

14  As discussed above, the trial court refused to allow hybrid or dual representation. The Sixth

15  Amendment guarantees the right to counsel, and the right to represent oneself is implied within.

16  Faretta v. California, 422 U.S. 806, 819 (1975). Although the Supreme Court has held that standby

17  counsel is permissible, there is no constitutional right to it. Id. at 834 fn. 46. The trial court acted

18  within its discretion in denying Petitioner's request.

19  Accordingly, the rejection of this claim by the state courts was neither contrary to or an

20  unreasonable application of clearly established Federal law, nor an unreasonable determination of the

21  facts in light of the evidence presented. See 28 U.S.C. § 2254(d). The claim should be denied.

22  **B. Ground Two**

23  Petitioner next claims the prosecution violated his due process rights under Brady v.

24  Maryland, 373 U.S. 83 (1963) by withholding exculpatory evidence which would have been

25  favorable to the defense.

26  This claim was first raised in Petitioner's single round of collateral review in the state courts.

27  The California Supreme Court, in its decision denying the petition dated March 16, 2005, determined

28  Petitioner had procedurally defaulted this claim. See Lodged Doc. No. 5. Specifically, the California

1   Supreme Court cited to In re Dixon, 41 Cal.2d 756 (1953), In re Lindley, 29 Cal.2d 709 (1947), In re

2   Hall, 30 Cal.3d 408 (1981), In re Swain, 34 Cal.2d 300, 304, and People v. Duvall, 9 Cal.4th 464,

3   474 (1995). Arguably, Petitioner is procedurally barred from now presenting this claim as well as the

4   rest of his claims which were likewise procedurally defaulted in state court. However, Respondent

5   did not raise procedural default as an affirmative defense. Procedural default "is not a jurisdictional

6   matter." Trest v. Cain, 522 U.S. 87, 89 (1997); Bennett v. Mueller, 322 F.3d 573, 586 (9th Cir. 2003)

7   (procedural default is an affirmative defense).  Thus, by failing to raise the defense Respondent has

8   effectively waived it. See Grooms v. Keeney, 826 F.2d 883, 885 (9th Cir.1987) (procedural default is

9   a defense that can be waived).

10       In such a case as this where the state court supplies no reasoned decision, the Court must

11   independently review the record to determine whether the state court clearly erred in its application

12   of Supreme Court law. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.2000) ("Federal habeas review

13   is not de novo when the state court does not supply reasoning for its decision, but an independent

14   review of the record is required to determine whether the state court clearly erred in its application of

15   controlling federal law."); see also, e.g., Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir.2002).

16   That is, although the Court independently reviews the record, it still defers to the state court's

17   ultimate decision.

18       In Brady, the Supreme Court held that "the suppression by the prosecution of evidence

19   favorable to an accused upon request violates due process where the evidence is material either to

20   guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87; see

21   also Strickler v. Greene, 527 U.S. 263, 280-281 (1999).  The Supreme Court has stated that the duty

22   to disclose such evidence is applicable even though there has been no request by the accused.  United

23   States v. Agurs, 427 U.S. 97, 107 (1976).  The duty to disclose encompasses impeachment evidence

24   as well as exculpatory evidence.  United States v. Bagley, 473 U.S. 667, 676 (1985).  Such evidence

25   is material "if there is a reasonable probability that, had the evidence been disclosed to the defense,

26   the result of the proceeding would have been different."  Id., at 682; see also Kyles v. Whitley, 514

27   U.S. 419, 433-434 (1995).  Additionally, "the rule encompasses evidence 'known only to police

28   investigators and not to the prosecutor.'" Strickler, 527 U.S. at 280, quoting Kyles, 514 U.S. at 438.

1   To constitute a Brady violation, the Supreme Court has set forth a three-part test: 1) "The evidence at

2   issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching";

3   2) "[T]hat evidence must have been suppressed by the State, either willfully or inadvertently"; and 3)

4   "[P]rejudice must have ensued."  Strickler, 527 U.S. at 218-282.

5       In this case, Petitioner contends the prosecution withheld certain "ISU" reports, medical

6   records, a videotape of interviews of correctional staff, Petitioner's "C-file," and "other evidence."

7   See Petition at 6. As argued by Respondent, Petitioner has failed to establish that a Brady violation

8   occurred in his case. The prosecution requested to see the ISU report which defense counsel had

9   referred to during the testimony of another officer. (RT 711.) From the record, it appears the

10  Department of Corrections had provided a copy of the report to defense counsel pursuant to

11  Petitioner's Pitchess[6] motion, but had not provided a copy to the prosecutor. The prosecutor did not

12  imply any wrongdoing on the part of the defense; he merely asked to view a copy of the report. There

13  can be no Brady violation here, because it was the defense which had the copy of the report.

14      Petitioner's Brady claim with respect to his medical records is equally meritless. Petitioner

15  contends the prosecution possessed something more than Petitioner, but he does not state what this

16  information was. Petitioner claims he should have been given access to both the file maintained by

17  the prison and the copy given to the defense to determine "what all was missing." Petitioner's

18  speculation that there could be something within the actual prison file that was not copied to the

19  defense does not amount to a Brady violation. See Jones v. Gomez, 66 F.3d 199, 204-205 (9th

20  Cir.1995).

21      Petitioner also claims the prosecution failed to produce the recording of Sgt. Rocha's

22  interviews. This assertion is also speculative. Petitioner fails to demonstrate that the actual recording

23  would have been exculpatory or favorable. Moreover, Petitioner was in possession of the written

24  report of Sgt. Rocha pursuant to the Pitchess motion, and defense counsel knew of the existence of

25  the recording. Petitioner cannot blame the prosecution if the defense counsel knew of the evidence

26  but did nothing.

27

28

---

[6]Pitchess v. Superior Court, 11 Cal.3d 531 (1974).

1    In light of the above, the state court did not clearly err in violation of <u>Brady</u>. The claim

2    should be denied.

3    **C. Ground Three**

4    Petitioner next claims the prosecution committed misconduct by improperly vouching for the

5    veracity of the State's witnesses, and improperly commenting on the deceitfulness of defense

6    witnesses. In support of this claim, Petitioner argues the prosecutor improperly referred to defense

7    witnesses as "incompetent," "arrogant," and "liars."

8    As with his second ground, this claim was considered procedurally defaulted by the state

9    courts. Therefore, there is no reasoned decision by the state court denying the claim, and the Court

10   must independently review the record to determine whether the state court clearly erred in its

11   application of Supreme Court law. <u>Delgado</u>, 223 F.3d at 982.

12   A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so

13   infected the trial with unfairness as to make the resulting conviction a denial of due process."

14   <u>Darden v. Wainwright</u>, 477 U.S. 168, 171, 106 S.Ct. 2464 (1986) (*quoting* <u>Donnelly v.</u>

15   <u>DeChristoforo</u>, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871 (1974)); <u>see</u>, <u>Bonin v. Calderon</u>, 59 F.3d

16   815, 843 (9th Cir. 1995).  To constitute a due process violation, the prosecutorial misconduct must be

17   "of sufficient significance to result in the denial of the defendant's right to a fair trial." <u>Greer v.</u>

18   <u>Miller</u>, 485 U.S. 756, 765, 107 S.Ct. 3102, 3109 (1987) (*quoting* <u>United States v. Bagley</u>, 473 U.S.

19   667, 105 S.Ct. 3375 (1985)). Under this standard, a petitioner must show that there is a reasonable

20   probability that the error complained of affected the outcome of the trial - i.e., that absent the alleged

21   impropriety, the verdict probably would have been different.

22   "It is improper for the prosecution to vouch for the credibility of a government witness."

23   <u>United States v. Roberts</u>, 618 F.2d 530, 533 (9th Cir.1980).  "Vouching consists of placing the

24   prestige of the government behind a witness through personal assurances of the witness's veracity, or

25   suggesting that information not presented to the jury supports the witness's testimony." <u>United States</u>

26   <u>v. Necoechea</u>, 986 F.2d 1273, 1276 (9th Cir.1993). In this case, the prosecution challenged the

27   credibility of defense witnesses, but the prosecution never vouched for the credibility of a

28   government witness.

1    In addition, the comments made by the prosecution regarding the credibility of the defense

2  witnesses cannot be considered misconduct. Neither defendant objected to them. In addition, the

3  comments were made with respect to the veracity of witnesses, which is permissible. In Dubria v.

4  Smith, 224 F.3d 994, 1003 (9Th Cir.2000) (en banc) (italics added), the prosecutor made the

5  following remarks during closing arguments:

6       But to get up here and get on the stand and look at you people and tell you the story that he
        told you in front of the family, *this piece of garbage*, making up every little bit of it, *he's the*
7       *biggest liar* you've ever encountered. He's worse than that. I'm not going to tell you. You
        can imagine some of the things I could tell you what he really is. I'm not going to tell you,
8       because you know. You know in your hearts what else.

9  The Ninth Circuit noted these comments were fair comment on the evidence. See also Williams v.

10  Borg, 139 F.3d 737, 744-45 (9th Cir.1998) (prosecutor's reference to defense argument as "trash" not

11  improper); United States v. Laurins, 857 F.2d 529, 539 (9th Cir.1988) (statement that defendant was a

12  liar could be construed as a comment on the evidence). Likewise, the prosecutor's comments

13  regarding certain witnesses being arrogant, liars, or incompetent were not misconduct; they were fair

14  comment on the evidence. The state court did not clearly err, and this claim should be denied.

15       **D.  Ground Four**

16    In his next claim for relief, Petitioner alleges the government introduced evidence it knew to

17  be false in violation of Petitioner's right to a fair trial and due process of law. Petitioner contends the

18  reports used by witnesses were written a long time after the reports completed immediately after the

19  incident and were inconsistent with those earlier reports.

20    This claim was also first raised during collateral review and dismissed by the California

21  Supreme Court as procedurally defaulted. As noted above, Respondent did not assert this affirmative

22  defense; therefore, the Court must determine whether the state court clearly erred.

23    The knowing use of false or perjured testimony against a defendant to obtain a conviction is

24  unconstitutional. Napue v. Illinois, 360 U.S. 264 (1959). As Respondent points out, there is no

25  evidence in this case to support Petitioner's assertion that the prosecutor intentionally presented false

26  testimony. Petitioner's claim is completely speculative. He merely points to some minor

27  inconsistencies in witness testimony. Such inconsistencies are inevitable in a trial which takes place

28  months after the incident. A witness's present recollection can hardly be expected to be precisely the

1    same in detail to his prior testimony, given the lapse of time. Moreover, the inconsistencies and

2    discrepancies were readily apparent to the defense attorneys who both attempted to impeach the

3    witnesses using those same discrepancies. The state court did not clearly err. This claim should also

4    be rejected.

5        **E. Ground Five**

6        Petitioner next argues his defense counsel was ineffective in failing to interview numerous

7    defense witnesses present at the incident, failing to file a complete Pitchess motion to obtain all

8    documents needed for the defense, failing to file a Murgia[7] motion, failing to secure an expert to

9    testify on the proper use of a side-handle baton, and failing to secure an expert who would testify

10   with respect to Petitioner's knee surgery. Petitioner further complains there existed a conflict of

11   interest involving defense counsel's representation.

12       The law governing ineffective assistance of counsel claims is clearly established for the

13   purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe, 151

14   F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance

15   of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S. 668, 687

16   (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that

17   counsel's performance was deficient, requiring a showing that counsel made errors so serious that he

18   or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466

19   U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard

20   of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of

21   reasonable professional judgment considering the circumstances. Id. at 688; United States v.

22   Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is

23   highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the

24   wide range of reasonable professional assistance.  Strickland, 466 U.S. 668, 687 (1984); Sanders v.

25   Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

26       Second, the petitioner must demonstrate that "there is a reasonable probability that, but for

27

28
_____

[7]Murgia v. Municipal Court, 15 Cal.3d 286 (1975).

1  counsel's unprofessional errors, the result ... would have been different," Strickland, 466 U.S. at 694.

2  Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial,

3  one whose result is reliable. Id. at 688.  The court must evaluate whether the entire trial was

4  fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78

5  F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

6      A court need not determine whether counsel's performance was deficient before examining

7  the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. at

8  697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in

9  prejudice must necessarily fail. However, there are certain instances which are legally presumed to

10  result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of

11  counsel or where the State has interfered with counsel's assistance. Id. at 692; United States v.

12  Cronic, 466 U.S. 648, 659 n. 25 (1984).  Ineffective assistance of counsel claims are analyzed under

13  the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v.

14  Middle, 215 F.3d 1058, 1062 (2000).

15      In this case, Petitioner fails to demonstrate that counsel erred in any manner, and fails to

16  show any prejudice resulting therefrom. He alleges numerous witnesses should have been called to

17  testify on his behalf; however, he fails to identify any of these witnesses, what they would have

18  stated, and how their testimony would have changed the outcome. In addition, there is no showing

19  that counsel did not in fact know of these witnesses but made a tactical decision not to call them. As

20  pointed out by Respondent, counsel did call nine witnesses for the defense.

21      Counsel also filed a complete Pitchess motion which the trial court granted in part and denied

22  in part. (CT 118-134, 157; RT 5-8.) The documents obtained were used by counsel to examine and

23  impeach witnesses. Petitioner fails to demonstrate how this motion was incomplete.

24      Petitioner has also failed to show how counsel erred in failing to file a Murgia motion.

25  Petitioner's allegation that the decision to prosecute may have been based on his complaint with the

26  Federal Bureau of Investigation is pure speculation.

27      Petitioner's complaint that counsel failed to secure an expert on baton usage is likewise

28  unfounded. He does not state what additional information this expert would have provided and he

1   fails to state how testimony from such an expert would have affected the outcome of the trial.

2       His allegation that counsel failed to secure a medical expert regarding his knee surgery is also

3   without foundation. As noted by Respondent, counsel did in fact attempt to proffer the testimony of

4   Dr. Jakes on this very subject. (RT 659.) However, the trial court conditionally disallowed the

5   testimony finding the surgery not in issue. (RT 663.)

6       Last, Petitioner claims defense counsel was ineffective due to a possible conflict of interest.

7   Petitioner asserts counsel failed to disclose that she also represented a Corcoran prison officer in an

8   assault matter.

9       "To establish a sixth amendment violation based on a conflict of interest, a defendant must

10  show that (1) that counsel actively represented conflicting interests, and (2) that an actual conflict of

11  interest adversely affected his lawyers performance." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980).

12  Petitioner must prove an actual conflict "through a factual showing on the record." Morris v.

13  California, 966 F.2d 448, 455 (9th Cir. 1992).  Petitioner must also show that the conflict likely had

14  an adverse effect on the representation.

15      Here, Petitioner's claim is completely conclusory and speculative. Petitioner claims counsel

16  may have had a possible conflict of interest. He fails to demonstrate that counsel actively represented

17  conflicting interests. In addition, he fails to establish that this alleged conflict had any adverse affect

18  on defense counsel's performance. Therefore, the claim must be rejected.

19      **F.  Ground Six**

20      Petitioner also alleges counsel was ineffective in forcing Petitioner to testify at trial.

21  Petitioner claims that counsel's alleged failures forced him to take the stand in his own defense. He

22  further claims the trial court failed to advise him that he had the choice of whether to testify or not.

23      Again, Petitioner has failed to demonstrate error on counsel's part. As set forth by

24  Respondent, counsel's decision whether to have the defendant testify "is a classic example of a

25  strategic trial judgment, 'the type of act for which Strickland requires that judicial scrutiny be highly

26  deferential.'" Hatch v. Oklahoma, 58 F.3d 1447, 1459 (10th Cir.1995), *quoting* Green v. Lynaugh,

27  868 F.2d 176, 178 (5th Cir.) (per curiam), *cert. denied*, 493 U.S. 831 (1989). Given the many witness

28  accounts placing guilt at Petitioner's feet, it was entirely reasonable for counsel to place Petitioner on

1   the stand to provide his own version of the events. Without his testimony, much of the incriminating

2   testimony would have gone unopposed.

3        In addition, Petitioner has failed to establish any prejudice resulting from his act of testifying.

4   From the record, it appears Petitioner was an articulate witness who provided his own consistent

5   account of the incident. It was already established that Petitioner was incarcerated at the time of the

6   offense; therefore, impeachment with his prior convictions would have been redundant.

7         Petitioner also faults the trial court for failing to advise him of his right to testify.

8   Regardless, it is clear Petitioner would have made this decision with his counsel as part of the

9   defense strategy.

10        Accordingly, this claim should also be denied.

11   **G.  Ground Seven**

12        In his next claim, Petitioner alleges the trial court erred in denying the <u>Pitchess</u> motion by

13   failing to properly handle and rule on the motion pursuant to California law.

14        As correctly argued by Respondent, the claim is one based on application of state law, and

15   generally, issues of state law are not cognizable on federal habeas. <u>Estelle v. McGuire</u>, 502 U.S. 62,

16   67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of

17   state law.' "), *quoting* <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990); <u>Gilmore v. Taylor</u>, 508 U.S. 333,

18   348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level

19   of a constitutional violation, may not be corrected on federal habeas"); <u>Tinsley v. Borg</u>, 895 F.2d

20   520, 530 (9th Cir.1990), *cert. denied*, 498 U.S. 1091 (1991) ("incorrect" evidentiary rulings are not

21   the basis for federal habeas relief). In addition, "the availability of a claim under state law does not of

22   itself establish that a claim was available under the United States Constitution." <u>Sawyer v. Smith</u>,

23   497 U.S. 227, 239 (1990), *quoting,* <u>Dugger v. Adams</u>, 489 U.S. 401, 409 (1989). Petitioner fails to

24   state a cognizable federal claim; therefore, the claim should be dismissed.

25        Moreover, the claim is meritless since the trial court did in fact conduct an *in camera* hearing

26   on Petitioner's motion. (RT 3.) After reviewing the records, the court issued its ruling. (RT 5-8.) As

27   to each correctional officer's file, the trial court made a determination as to which items would be

28   disclosed and which would not. (RT 5-8.) Thus, this claim should be denied.

1    **H.  Ground Eight**

2        In his final claim for relief, Petitioner argues there was insufficient evidence to support the

3    conviction in violation of the Sixth and Fourteenth Amendments.

4        In reviewing sufficiency of evidence claims, California courts expressly follow the Jackson

5    standard enunciated in Jackson v. Virginia, 443 U.S. 307 (1979).  See People v. Johnson, 26 Cal.3d

6    557, 575-578 (1980); see also People v. Thomas, 2 Cal.4th 489, 513 (1992).  Pursuant to the

7    Supreme Court's holding in Jackson, the test in determining whether a factual finding is fairly

8    supported by the record is as follows:

9        "[W]hether, after viewing the evidence in the light most favorable to the
         prosecution, any rational trier of fact could have found the essential elements
10       of the crime beyond a reasonable doubt."

11   Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).

12       Sufficiency claims are judged by the elements defined by state law.  Jackson, 443 U.S. at 324

13   n. 16. This Court must presume the correctness of the state court's factual findings. 28 U.S.C.

14   § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).  This presumption of correctness

15   applies to state appellate determinations of fact as well as those of the state trial courts.  Tinsley v.

16   Borg, 895 F.2d 520, 525 (9th Cir.1990).  Although the presumption of correctness does not apply to

17   state court determinations of legal questions or mixed questions of law and fact, the facts as found by

18   the state court underlying those determinations are entitled to the presumption.  Sumner v. Mata, 455

19   U.S. 539, 597 (1981).

20       This claim is completely without merit. Numerous eyewitnesses testified regarding

21   Petitioner's assault of Officer Floyd. Viewing this evidence in the light most favorable to the

22   prosecution, it is clear the evidence was sufficient such that any rational trier of fact could have

23   found the elements of the crime beyond a reasonable doubt.

24                                **RECOMMENDATION**

25       Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

26   DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for

27   Respondent.

28       This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill,

1  United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule

2  72-304 of the Local Rules of Practice for the United States District Court, Eastern District of

3  California.  Within thirty (30) days (plus three days if served by mail) after being served with a copy,

4  any party may file written objections with the court and serve a copy on all parties.  Such a document

5  should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to

6  the objections shall be served and filed within ten (10) court days (plus three days if served by mail)

7  after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to

8  28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

9  time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th

10  Cir. 1991).

11

12       IT IS SO ORDERED.

13  **Dated:   December 17, 2007**                         **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28